72 F.3d 126
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Thomas F. CURRY, Plaintiff-Appellant,
v.
E-SYSTEMS, INCORPORATED, Defendant-Appellee.
 No. 94-1779.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1994
Decided Dec. 11, 1995.
 
 ARGUED: John Michael Bredehoft, CHARLSON & BREDEHOFT, P.C., Fairfax, Virginia, for Appellant. Paul Charles Skelly, HOGAN & HARTSON, L.L.P., McLean, Virginia, for Appellee.
 ON BRIEF: Elaine C. Bredehoft, CHARLSON & BREDEHOFT, P.C., Fairfax, Virginia, for Appellant. William P. Flanagan, Amy Folsom Kett, HOGAN & HARTSON, L.L.P., McLean, Virginia; HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellee.
 Before WILKINSON, Circuit Judge, PHILLIPS, Senior Circuit Judge, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Thomas F. Curry appeals from a grant of summary judgment dismissing his action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq. We affirm.
 
 I.
 
 2
 E-Systems, Incorporated (E-Systems) is involved in the international development and manufacture of electronic systems and products. A significant portion of the corporation's business is generated from defense-related government contracts. In 1983 E-Systems hired Curry to serve as Chief Scientist of its Center for Advanced Planning and Analysis (CAPA), a position created specifically for him.
 
 
 3
 E-Systems began laying off personnel in the summer of 1990, and at that time some CAPA personnel were transferred and others were discharged. In the spring of 1993, E-Systems implemented a second lay-off, which again involved CAPA technical personnel, this time including Curry, who was discharged on May 26, 1993. At the time of his discharge, Curry was the oldest employee on CAPA's then remaining technical staff of eight. The second oldest member of the staff, aged sixty-three, was also discharged. All of the six members retained at that time were over the age of forty-five: Phillip Dickinson (60), James Mitchell (60), Robert DiPalma (57), Malcolm Uffelman (57), William Butz (54), and Thomas Milbourne (46).
 
 
 4
 Soon after his discharge, Curry complained about it to two persons at E-Systems' headquarters, neither of whom was involved in the decision to discharge him. When Curry told one of them, E-Systems' Chairman of the Board, that he had been fired because no one was interested in his projects, the Chairman answered,"That's bull----." When Curry told the other, a member of E-Systems' Executive Board of Directors about his termination, the Director asked Curry, "How old are you?" When Curry responded with his age, the Director stated, "Damn, Tom ... it's time to hang it up."
 
 
 5
 In November, 1993, Curry filed this action, alleging age discrimination in violation of the ADEA and wrongful termination under state law.[1] During discovery, Curry's immediate supervisor, Malcolm Uffelman, testified in deposition that at the time of the two reductions in force involving CAPA members, E-Systems was changing its focus from long-term government-funded "research work" toward more short-term "business capture." As a result, Uffelman deposed, E-Systems had no interest in continuing to pursue the highly sophisticated technical projects on which Curry was working. He cited a lack of healthy funding from the Department of Defense as reason for the change.
 
 
 6
 Another member of E-Systems' upper-level management, William McClain, aged fifty-nine, cited this same rationale for Curry's discharge during his deposition. He deposed that the reduction in personnel became necessary after the corporation's decision to merge CAPA into a larger division of the company called Government and International Operations (GIO). This merger occurred in May 1993, the month of Curry's discharge. After the reorganization, CAPA became known as the Studies and Analysis component of E-Systems. McClain, the Vice President of GIO, testifying on deposition, took partial responsibility for the decision to terminate Curry, but deposed that the ultimate decision had been made by the Vice President of E-Systems, Eaton Adams, aged sixty-three, who died before this action was commenced. McClain deposed that Adams agreed with the reasoning for Curry's discharge that both he and Uffelman had cited.
 
 
 7
 Upon the closing of discovery, E-Systems moved for summary judgment and attached an affidavit of McClain which stated that E-Systems' Studies and Analysis section would be disbanded in a matter of weeks. The affidavit did not state whether any further reductions would be necessary as a result of the merger. In opposing the motion, Curry argued that his summary judgment submissions both sufficed to establish a prima facie case of discrimination and to demonstrate a genuine issue as to whether E-Systems' proffered reasons for his termination were pretextual. The district court granted E-Systems' motion on alternative grounds. First, assessing the claim under the McDonnell-Douglas three-step proof scheme, the court held that Curry's submissions failed to establish a prima facie case and, in any event, failed to raise a genuine issue as to whether E-Systems' proffered reason for his discharge was pretextual. Then, assessing the claim for direct proof of age-discrimination, the court held that there was insufficient direct evidence to support a finding of age-bias as the cause of Curry's discharge. J.A. 455-59.
 
 
 8
 This appeal followed.
 
 II.
 
 9
 In order to prevail on an ADEA claim, a plaintiff must show that the employer would not have taken the adverse employment action at issue "but for" the employee's age. Sailor v. Hubbell, Inc., 4 F.3d 323, 326 (4th Cir.1993) (citing Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 847 (4th Cir.1988)). A plaintiff can do so by offering direct evidence of the requisite discriminatory motive, Duke v. Uniroyal Inc., 928 F.2d 1413, 1417 (4th Cir.1991) or, alternatively, by successfully proceeding under the familiar three-step proof scheme developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for Title VII actions as transposed for application in ADEA cases. See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238-39 (4th Cir.1982). Under that scheme, once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production is placed on the employer to articulate a legitimate nondiscriminatory reason for the challenged employment decision at peril of suffering an adverse judgment if he fails. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If the employer carries this burden, the presumption of discrimination "drops out of the picture" and the plaintiff bears the ultimate burden of proving both that the employer's asserted reason was pretextual and that the challenged employment action was actually taken because of the claimant's age. Id. at 2749.
 
 
 10
 Though this proof scheme was originally developed as "merely a sensible orderly way to evaluate the evidence" adduced in a bench trial, Furnco Constr. Co. v. Waters, 438 U.S. 567, 577 (1978), it may properly be applied, as appropriately adapted, to summary judgment rulings. In this circuit, as in others, this regularly has been done in ADEA cases. See, e.g., E.E.O.C. v. Clay Printing Co., 955 F.2d 936 (4th Cir.1992); Mitchell v. Data General Corp., 12 F.3d 1310 (4th Cir.1993); O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542 (4th Cir.1995). In that setting, assessment, as dictated by the grounds of the motion, proceeds in the sequential order of the proof scheme. Thus, where an employer-defendant as movant has contended both that the claimant's submissions fail to establish a prima facie case or, alternatively, to present a genuine issue as to the credence of an asserted non-discriminatory reason, our practice (at both levels) has been to address these in order as separate inquiries.[2] See Clay, 955 F.2d at 943-44 (no prima facie case; no genuine issue as to pretext); Mitchell 12 F.3d at 1316-18 (same); O'Connor, 56 F.3d at 546-48 (no prima facie case; alternative ground not reached).
 
 
 11
 This, as indicated, was the procedure followed in the district court. There, E-Systems urged in support of its summary judgment motion both grounds in the alternative and the district court ruled in its favor on both, as well as ruling that Curry had made no proffer of direct evidence of age-bias sufficient to present a genuine issue for trial. The basis for the district court's prima facie case ruling was the failure of Curry's evidence to show, as our decisions require, that any of the CAPA employees retained when he was discharged was "outside the protected age class." See EEOC v. Western Electric, 713 F.2d 1011, 1015 (4th Cir.1983); Duke v. Uniroyal Inc., 928 F.2d 1413, 1418 (4th Cir.1991). Before us, the parties join issue principally upon the correctness of this ruling as a basis for dismissing the claim. We do not address it, however, because in the interval the Supreme Court has granted certiorari to consider the validity of our rule, see O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 546 (4th Cir.1995), cert. granted, 64 U.S.L.W. 3342-43 (U.S., Nov. 14, 1995); and because the grant of summary judgment may be affirmed, as E-Systems argues, on the alternative basis that in any event the record fails to present a genuine issue as to whether E-Systems' asserted reason for Curry's discharge was a pretext for age-discrimination.
 
 
 12
 Assuming then, as we will for purposes of this case, that Curry's summary judgment submission may have made out a prima facie case, the next question presented is whether E-Systems produced admissible evidence of a legitimate, non-discriminatory reason for his discharge. Curry argues that it did not. He does not say that the reason advanced--management's decision to phase the CAPA group's functions out for economic reasons--was not, if true, a legitimate, nondiscriminatory one. His argument is only that the evidence proffered to establish this reason was inadmissible, therefore insufficient even to carry this modest production burden. Specifically, he contends that the deposition testimony relied upon to advance this as the reason was that of two people in management, Uffelman and McClain, who ascribed it to a third person in management, Eaton Adams, on the basis of out-of-court statements made to them by Adams, since deceased. This evidence, Curry contends, would be inadmissible at trial, hence was insufficient for summary judgment purposes, both under Fed.R.Evid. 602 (lack of personal knowledge) and Fed.R.Evid. 802 (hearsay).
 
 
 13
 We disagree. The evidence would not be inadmissible on either ground. In the first place, McClain's testimony indicated that he participated in the decision to discharge Curry, having recommended it with knowledge of the reason why the downsizing was being imple mented. His testimony could not, therefore, have been without personal knowledge of the reason, even assuming, arguendo, that personal participation in devising the reason was necessary to "personal knowledge" of it. Furthermore, the deposition testimony as to Adams' statements of his reason were not offered to prove the truth, the correctness of the reason, only that this was the reason. As such, the testimony was not inadmissible as hearsay. See Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1423 (10th Cir.1991) (documentary evidence of employer's out-of-court statements of reasons for reduction-in-force not hearsay because not offered to prove truth of contents, but motivation).
 
 
 14
 This leads to the final question presented, whether Curry's forecast of evidence sufficed, considered as a whole, to present genuine issues of fact both as to whether E-Systems' proffered reason was false and whether the real reason was discrimination because of Curry's age. See Hicks, 113 S.Ct. at 2752 (burden, once legitimate nondiscriminatory reason is proffered, is to prove both, i.e. that proffered reason was pretextual and that pretext was "for discrimination").
 
 
 15
 Curry contends that his forecast of evidence does so suffice, relying on several specific items: (1) that all the CAPA staff members retained when he was discharged were younger than he; (2) the remarks of two E-Systems management people when told of the purported reason for Curry's discharge; (3) that CAPA's focus did not in fact change after Curry's discharge; (4) that Curry's expertise was well-suited to the asserted new focus; (5) that CAPA continued work on Curry's project after he was discharged; and (6) that E-Systems refused to keep him on as an unpaid consultant.[3] In considering whether this evidence does suffice to put the clearly material facts of "pretext" and "pretext for age-discrimination" in issue and hence to preclude summary judgment, we must ask whether it raises "genuine" issues. "[M]erely colorable" evidence, evidence that is "not significantly probative," though clearly relevant to the issues, will not suffice. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The standard we apply, paralleling that for judgment as a matter of law at trial, is whether there is evidence that would permit a jury rationally to find, the burden of persuasion being on Curry, that E-Systems' asserted reason was a false one and that age discrimination was the real reason for Curry's discharge. See id. at 250-52.
 
 
 16
 Assessed under that standard, we conclude that the evidence as forecast on the summary judgment record did not suffice, considered as a whole, to create genuine issues as to these material facts.
 
 
 17
 Curry's principal reliance is on the differentials between his age and those of the CAPA staff members who were retained just after his discharge.[4] Of the eight CAPA staff members employed just before Curry was discharged, he was the oldest at age-66. The next oldest, then age-63, was also discharged. That may seem significantly probative of age as the real criterion for discharge being employed until the number and ages of those retained at the time are considered. Of the six retained, none was below 45; only one, at age 47, was below 50; two were 60, one 57, and one 54. There is no evidence, and Curry never has claimed, that the whole reduction-in-force process was a disguised youth movement of which he was simply one victim. His claim is more narrowly that he is the victim of a relative-age criterion that was used to discriminate between individuals in a small group consisting entirely of employees all of whom were well on the highside of the normal life expectancy range. That is certainly a cognizable theory of age-discrimination under the ADEA. We believe, however, that to be given any weight as significantly probative of age discrimination in such a situation, the differentials between the ages of the claimant and the retained group as a whole must be substantial and the employee-group of a sufficient size to provide a fair basis for drawing any inference from relative ages. Not just any age differential, no matter how slight and involving no matter how small a group of employees can be considered significantly probative that age was the criterion driving choices between employees. The ADEA is an anti-age-discrimination statute, not an age-preference statute. To accord any significant weight to relatively small age differentials between relatively small groups of employees would be effectively to treat it as the latter. See Western Electric, 713 F.2d at 1016 (age discrimination not inferable where demoted employees "were very close in age to most of the younger supervisors who were not demoted"); Barnes v. GenCorp Inc., 896 F.2d 1457, 1467 n. 13 (6th Cir.1990) (if, hypothetically, most retained employees were only a year younger than discharged claimant, evidence "likely not ... probative" of age-discrimination).
 
 
 18
 We need not--could not--lay down bright line rules for the requisite age-spread and group-sample size to be accorded any weight as proof of age-discrimination. We are satisfied, however, that they do not suffice here where a 66-year old claimant has been discharged along with one other 63-year old employee out of a group of only eight employees, with none of the six retained being younger than 47, four of the six being 57 or older, and the two oldest, 60. This age spread, in a group this small, is not sufficiently probative of intentional age-discrimination to be accorded significant weight in the summary judgment assessment. Cf. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir.1994) (emphasizing statistical insignificance of age-differential evidence involving only relatively small number of employees discharged during reduction-in-force process).
 
 
 19
 The other evidence relied upon is equally insufficient to create genuine issues respecting these material facts. They warrant less discussion.
 
 
 20
 The remarks of the two superiors to whom Curry reported the age neutral reason given for his discharge--one suggesting doubt about the validity of the reason, the other implying possible agreement that Curry's age was an appropriate consideration--are entitled to no weight. Neither of these persons was involved in the corporate decision to discharge Curry, nor is there any suggestion that either had been told of their reason by those who did make the decision. Remarks of outsiders to the decisional process that reflect only their personal beliefs and opinions are not relevant to the issue of the decisionmakers' motive. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir.1980) ("It is the perception of the decisionmaker which is relevant"); see also, Birkbeck, 30 F.3d at 511-12 (noting insufficiency of "isolated" comments, even those of decisionmakers, to support finding of discrimination).
 
 
 21
 The remainder of the evidence relied upon is designed, in various ways, to draw in question the truth of E-Systems' assertion that Curry was discharged only because the functions of the CAPA staff of which he was the chief scientist were being phased out as part of an economically-forced redirection of E-Systems' operations, and that his specific skills were deemed by management not to be as compatible with the company's re-focused operations as were those of others. First, he points to evidence which he says suggests that CAPA's focus did not in fact change after his discharge; that work on its and his projects were simply continued by others. The evidence he relies upon simply raises no genuine issues respecting these facts, assuming they were material to the issues of pretext in the proffered reason. In the first place, Curry has not disputed E-Systems' affidavit that what remained of CAPA after its merger with GIO was now being disbanded, so that his particular employment group would no longer exist as an entity. More significantly, Curry's evidence of continued work on his and CAPA's projects by other individuals and entities reflects no more than the inevitable carry-through to completion of some few projects, a fact candidly conceded by E-Systems. Curry offered no evidence that there was not, as E-Systems asserted, a fairly immediate phasing out of those functions formerly assigned to CAPA and his staff. By his own deposition testimony, Curry conceded that in the last six months before his discharge between twenty and twenty-five percent of his working time was spent on a later-cancelled environmental project, twenty percent on a later-cancelled project for the National Security Agency, and another twenty percent reading technical journals. And he acknowledged that several smaller projects--accounting for another five percent of his time--were either completed or relatively unsuccessful. This evidence would not support a finding that after his discharge, his work continued to be carried on by others.
 
 
 22
 Curry's evidence designed to suggest that if a change in business focus of the type asserted by E-Systems were to be made, he was better qualified to direct the new efforts than were those retained is of no weight on the pretext issues. This evidence rests entirely on his own self-serving appraisals which under our decisions disentitles it to consideration on the issue of employment discrimination. See Flax, 618 F.2d at 1067 ("not relevant" to issue of employer motivation). And, to the extent the appraisal, even if true, suggested simply poor business judgment on E-Systems' part, that of course is not actionable as employment discrimination. See Holder v. City of Raleigh, 867 F.2d 823, 829 (4th Cir.1989).
 
 
 23
 Finally, Curry's contention that E-Systems' refusal to hire him as an "unpaid consultant" somehow is probative of age-discrimination eludes us. Apparently, the suggestion is that nothing but age-bias could account for E-Systems' refusal to take his work even on a gratis basis. A more plausible assessment, as E-Systems points out, would be that his work was no longer needed, even for free, precisely as the company has contended.
 
 III.
 
 24
 Because we conclude that even assuming Curry has made out a prima facie case under the McDonnell-Douglas proof scheme, his forecast of evidence was not sufficient to support findings of fact both that E-Systems' proffered reason for his discharge was false and that the real reason was intentional age-discrimination, we affirm the district court's grant of summary judgment to E-Systems.
 
 
 25
 SO ORDERED.
 
 
 
 [1]
 The district court dismissed the state-law wrongful termination claim without prejudice for lack of jurisdiction. Curry subsequently refiled the claim in state court. E-Systems then removed the claim to federal court pursuant to 28 U.S.C. Sec. 1446 and the parties agreed to a Consent Order staying proceedings on that claim pending resolution of this appeal
 
 
 [2]
 Cf. U.S. Postal Service Bd. of Govs. v. Aikens, 460 U.S. 711 (1982), noting that once an employment discrimination action has proceeded through bench trial to conclusion without having been dismissed for lack of a prima facie case, the question whether a prima facie case under the McDonnell-Douglas proof scheme was properly made out "is no longer relevant." Because at this point the district court has before it all the evidence needed to decide the discrimination issue vel non, it should proceed directly to that question. Id. at 715. The difference of course is that the question on summary judgment is not whether on all the evidence the claim has been established on the merits, but whether there is a submissible issue of material fact for trial. To answer that, the first logical inquiry is whether the plaintiffs' proffered evidence would make out a prima facie case, hence survive a motion to dismiss, before ever getting to any possible "pretext" issues
 
 
 [3]
 Curry's actual argument in reliance on these items of evidence is a confused one partially based on the mistaken premise that, under Hicks, evidence of pretext can suffice, standing alone, to raise a submissible issue of age-discrimination, hence to preclude summary judgment. Appellant's Br. 28-32. Hicks holds the exact opposite: that proof of pretext alone will not suffice to support a finding of age discrimination, though coupled with proof of the prima facie case, it may. Hicks, 113 S.Ct. at 2749. Proceeding on his mistaken contrary premise, Curry relies specifically on items (3)-(6) as sufficiently suggesting the falsity of E Systems' proffered reason, hence as sufficiently raising a genuine issue of discrimination in his discharge. Appellant's Br. at 32-39. Elsewhere in his argument, however, in the course of urging the sufficiency of his evidence to make out a prima facie case, he identifies items (1) and (2) as sufficient "other evidence" that age-discrimination was the real reason for his discharge. Id. at 24-25. Because on a proper analysis of the sufficiency of Curry's evidence to raise genuine issues both as to the proffered reason's falsity and as to age-discrimination as the real reason, these items of evidence should have been considered together for that purpose, we do so here on de novo review
 
 
 [4]
 The actual focus of Curry's reliance on the age-differential evidence is as proof of the prima facie case. Appellant's Br. 11-24. Having assumed for purposes of this case that the prima facie case was established, we can--and should in fairness--consider this age-differential evidence for its possible relevance to the end-stage "pretext" issues. See Hicks, 113 S.Ct. at 2749 (in determining whether claimant has proved employer's asserted reason a pretext for intentional discrimination, court considers all evidence, whether advanced to establish prima facie case or to prove "pretext")