**Susan Elaine MOORE, Plaintiff,**

**v.**

**J.P. STEVENS & COMPANY, INC., JPS Automotive, L.P. and JPS Automotive Products Corp., Defendants.**

**CA No. 6:96–242–20AK.**

United States District Court,
D. South Carolina,
Greenville Division.

Jan. 27, 1997.

Edwin L. Turnage, Travelers Rest, SC, for Plaintiff.

M. Baker Wyche, III and Steven M. Wynkoop, Greenville, SC, for Defendants.

### ORDER

HERLONG, District Judge.

This matter is before the court with the Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b) and Local Rule 19.02 DSC. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may

accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The plaintiff, Susan Elaine Moore ("Moore"), alleges that after reporting an incident of alleged sexual harassment, defendants retaliated against her in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. The defendants, J.P. Stevens & Company, Inc., JPS Automotive, LP, and JPS Automotive Products Corp. (collectively "JPS"), claim that they fired Moore for excessive absenteeism and have moved for summary judgment. In his Report and Recommendation, United States Magistrate Judge William M. Catoe, Jr. recommends that the court deny JPS's motion. JPS has filed objections to the Report and Recommendation.

### I. Facts

At the time of the alleged violation, Moore was employed by Personnel, Inc., a temporary employment agency in Greenville, South Carolina. She was assigned employment with JPS on December 27, 1994, and worked as an attacher at the Parker Plant until her termination on February 26, 1995.

Moore alleges that throughout her employment, she was sexually harassed by a male co-worker, Jackie Stewart ("Stewart"). She claims that she first attempted to complain about the problem on February 20. On this date, she told her supervisor, Janet Gillespie ("Gillespie"), that she was "having some problems with some of the people [she] was working with." (Moore Dep. at 55.) Moore did not tell Gillespie that the conduct complained of was sexual in nature, and Moore states that Gillespie told her to go back to work and that she would take care of it.

The following day, Moore met with Gillespie and two other managers and alleged that she had been sexually harassed[1]. Gillespie and the other managers interviewed Moore and Stewart individually about the alleged harassment. Stewart denied the allegations. Gillespie granted Moore's request to be moved to another work group. Additionally, Moore did not want to return to work because she had been crying, and Gillespie let her go home early.

The next day, February 22, Moore called in and informed JPS that she continued to be upset and was unable to work. On February 23, she returned to work. Gillespie held a preshift meeting where she told all employees to "keep your private business to yourself." (Mag. Judge's Rep. & Rec. at 3.) JPS alleges that it warned Moore about her absenteeism on this day. *See* (Def.'s Mem. in Supp. of Mot. for Summ. J. Ex. B.) ("Disciplinary Activity Sheet for Non–Core Employees"). Moore states that she was not given a warning.

On February 26, Moore asked to leave work early because she found out that her daughter, who was being cared for by her mother, was running a fever. Gillespie told her that if she left, she would be fired for absenteeism. Moore left anyway, and JPS terminated her. *See* (Moore Dep. at 69) (stating, "She [Gillespie] said: 'If you go home, I'm going to have to let you go.' I [Moore] said: 'Well, I guess I'm fired then.'")

JPS alleges that Moore was fired for absenteeism[2]. In addition to the absences surrounding the sexual harassment incident, JPS alleges that Moore called in sick on January 18 and February 6 and 12. (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3.) However, Moore does not remember whether she was absent on these days. *See* (Moore Dep. at 51.) JPS further states that Moore came in late on January 20 and missed an additional day of work on January 10 because of automobile problems. (Def.'s

---

1. JPS argues that Moore instigated the sexual advances. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 4.) To support this argument, JPS submitted statements from other workers that allege: 1) Moore asked Stewart to move in with her; 2) Moore propositioned fellow employees, Paul Pool and Marty Mitchell; and 3) Moore offered to have sex with Roy Lesly for $200. *See*

(Def.'s Mem. in Supp. of Mot. for Summ. J. Ex. E, F.)

2. JPS also mentions that it employed Moore from August 29, 1988 until September 20, 1988. JPS's records indicate that she was terminated after accruing seven absences. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 1, Ex. A.)

Reply to Pl.'s Resp. to Def. Mot. for Summ. J. at 3.) All of these absences are documented on the original absentee record. *See* (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. B.) Moore argues that some incorrect entries make the original absentee record unreliable. (Pl.'s Resp. to Def.'s Obj. to Rep. & Rec. at 2.)

## II. Summary Judgment Standard

Summary judgment is proper only when the nonmoving party has placed no genuine issue of material fact before the court and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must assess the evidence and draw all permissible inferences in the nonmovant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must nevertheless make a sufficient evidentiary showing on each element of his claim such that a jury could reasonably find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 provides an important mechanism for avoiding a wasteful trial which would be of no use in disposing of the case. *Id.* at 327, 106 S.Ct. at 2554–55.

## III. Discussion

Moore claims that JPS fired her, in violation of Title VII, because she complained that a co-worker was sexually harassing her. Title VII of the Civil Rights Act of 1964 prohibits sexual harassment that is sufficiently severe to alter the conditions of the victim's employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII also makes it illegal for an employer to retaliate against employees who assert their Title VII rights. 42 U.S.C. § 2000e–3(a) (1994).

Because Moore has no direct evidence of retaliatory discharge, she must proceed under the indirect, burden-shifting method of proof developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Fourth Circuit Court of Appeals has applied this three-step proof scheme to summary judgment proceedings. *See, e.g., Mitchell v. Data Gen. Corp.*,

12 F.3d 1310, 1315, 1316 (4th Cir.1993) (ADEA case).

### A. The Prima Facie Case

In the first stage of the *McDonnell Douglas* scheme, the plaintiff must prove a prima facie case of retaliatory discharge by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). To establish a prima facie case for retaliatory discharge under Title VII, Moore must provide evidence that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action by JPS; and (3) there is a causal connection between the protected activity and the adverse action. *McNairn v. Sullivan*, 929 F.2d 974 (4th Cir. 1991) (citation omitted).

JPS has not objected to the magistrate judge's conclusion that Moore established her prima facie case. The court is required to review only those matters to which an objection is made. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report . . . to which objection is made"); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir.1983). Accordingly, the court adopts the magistrate judge's conclusion that Moore established her prima facie case.

### B. JPS's Nondiscriminatory Reason

Once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production is placed on the employer to articulate a legitimate nondiscriminatory reason for the challenged employment decision. *Hicks*, 509 U.S. at 506, 507, 113 S.Ct. at 2747 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). JPS meets this burden of production by asserting that it fired Moore for absenteeism.

At this point, the circuits are split on what evidence a plaintiff must produce to defeat an employer's summary judgment motion. *See* J. Hagood Tighe, *The Refined Pretext–Plus Analysis: Employees' and Employers' Respective Burdens After Hicks*, 46 S.C. L.Rev.

333, 356–59 (1995); Karen W. Kramer, *Overcoming Higher Hurdles: Shifting the Burden of Proof After Hicks and Ezold,* 63 Geo. Wash. L.Rev. 404, 418 (1995); Jody H. Odell, *Between Pretext Only and Pretext Plus: Understanding St. Mary's Honor Center v. Hicks and Its Application to Summary Judgment,* 69 Notre Dame L.Rev. 1251, 1277–80 (1994). A majority of circuits, including the Third, Sixth, Seventh, Eighth, and Eleventh Circuits, hold that a plaintiff can survive summary judgment by raising a genuine factual issue as to whether the nondiscriminatory reason was truthful. *See* Tighe, *supra,* at 358 n. 174; *see also* Odell, *supra* at 1278; Kramer, *supra,* at 417 n. 96. These courts infer discrimination if a plaintiff can prove his or her prima facie case and raise a genuine issue as to the truthfulness of the employer's proffered reason. A minority of circuits, including the First and Fifth Circuits, have applied a more exacting standard. Tighe, *supra,* at 357 n. 169; *see also* Odell, *supra* at 1279; Kramer, *supra* at 418 n. 103. These courts hold that a plaintiff cannot survive summary judgment by merely showing that the employer's nondiscriminatory reason was a lie. The plaintiff must also introduce evidence from which a jury could reach the ultimate finding of discrimination. Both views find support for their positions in the Supreme Court's controversial, 5–4 decision in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In *Hicks,* the Court held that a plaintiff is not entitled to judgment as a matter of law if all that he can show is that the employer's nondiscriminatory reason was pretext (i.e. that the employer was lying). The Court

stated that the plaintiff must not only show that the employer's nondiscriminatory reason was false, but must also provide some additional evidence of discrimination. *Hicks,* at 515, 519, 113 S.Ct. at 2751–52, 2753–54 (stating that the plaintiff must show "both that the reason was false, and that the discrimination was the real reason" and that "it is not enough . . . to disbelieve the employer").

However, the opinion was muddied by seemingly contradictory language stating,

[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination.

*Hicks,* at 511, 113 S.Ct. at 2749. This seemingly contradictory language has contributed to the confusion among the circuits.

■ The Fourth Circuit follows the more exacting, minority standard for summary judgment motions[3]. Accordingly, Moore must not only raise a genuine factual issue about the legitimacy of JPS's proffered reason; she must also produce sufficient evidence to show that retaliation was the real reason.

■ Moore has not produced sufficient evidence from which a jury could determine that JPS fired her in retaliation for complaining of sexual harassment. First, the magistrate judge found that there was a question

---

3. *See Wooten v. Roche Biomedical Lab., Inc.,* No. 95–2458, 1996 WL 515253, at *1 (4th Cir. Sept.11, 1996) (unpublished opinion) (reviewing a grant of summary judgment, citing *Hicks,* and stating that the plaintiff must show "the proffered reason was false and that discrimination was the real reason"); *Pruitt v. Howard County Sheriff's Dep't,* No. 95–1193, 1996 WL 37031 (4th Cir. Jan. 31, 1996) (unpublished opinion) (reviewing dismissal of discrimination suit, citing *Hicks,* and stating, "Once the defendant has offered a legitimate explanation, the presumption of discrimination drops away, and the plaintiff must prove that the employer's proffered reason is pretextual and the adverse employment action was actually taken because of race or sex"), *cert* denied, — U.S. —, 116 S.Ct. 1879, 135 L.Ed.2d 175 (1996); *Curry v. E–Systems, Inc.,* No. 94–1779, 1995 WL 729512 at *2 (4th Cir. Dec. 11) (unpublished opinion) (reviewing a grant of summary judgment, citing *Hicks,* and stating, "the plaintiff bears the ultimate burden of proving both that the employer's asserted reason was pretextual and that the challenged employment action was actually taken because of the claimant's age"), *cert denied,* — U.S. —, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996); *accord,* Tighe, *supra,* at 357 n. 169. *Contra* Odell, *supra,* at 1277 n. 39 (citing *Mitchell v. Data Gen.,* 12 F.3d 1310 (1993)); Kramer, *supra,* at 418 n. 96 (citing *Mitchell* ).

of fact about Moore's number of absences and whether she was warned that her absences were excessive. (Rep. and Rec. at 5, 6.) Even if there is a legitimate factual dispute on these issues, such evidence, while probative of pretext, is insufficient to permit a trier of fact to reach the ultimate conclusion that JPS fired her in retaliation for complaining of sexual harassment.

Second, the magistrate judge found that in firing Moore, JPS failed to follow its absentee policy. (Rep. and Rec. at 6.) Moore argued that even though she was a temporary worker, JPS should have followed its policy for permanent workers and not fired her until her thirteenth absence. She argued that JPS told the EEOC that the permanent worker absentee policy applied to "non-core" employees. See (Rep. and Rec. at 6.) However, this statement by Mr. Cauble to the EEOC was clearly taken out of context. Mr. Cauble was referring to the fact that non-core employees and core employees *on probation*[4] were generally treated the same. (Def.'s Obj. to Rep. & Rec. at 4, 5.) Only permanent employees receive the benefit of this absentee policy. This conclusion is supported by Moore's own chart showing the number of absences non-core employees were allowed before being fired for absenteeism. See (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 6, 7) (all of the thirty-one non-core employees fired for excessive absenteeism were fired before they accumulated thirteen absences).

Finally, the magistrate judge found that there was evidence that JPS allowed Moore fewer absences than other non-core employees fired for absenteeism. (Mag. Judge's Rep. & Rec. at 6.) However, a review of this data only reveals that JPS was inconsistent in the number of absences allowed before termination. This inconsistency is not surprising considering that over a dozen different supervisors were making the termination decisions. (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at App. 14–17.) Even if one assumes that Moore was only absent two times (JPS argues, and its records indicate, that she had five absences) there still were other employees who were fired for fewer absences. *Id.* Additionally, Moore was allowed more partial absences (four) than most of the other employees who were terminated. (*Id.* at 6–7.)

After a thorough review and for the reasons stated above, the court adopts and incorporates only those portions of the Report and Recommendation that are consistent with this opinion. It is therefore

**ORDERED** that JPS's motion for summary judgment is granted.

**IT IS SO ORDERED.**

---

4. Core employees on probation are employees who have not completed JPS's 90–day, probationary period. (Def.'s Obj. to Rep. and Rec. at 5 n. 1.)