Delois BLANKENSHIP, Plaintiff,

v.

BUCHANAN GENERAL HOSPITAL, Defendant.

No. CIV A 1:96CV00182.

United States District Court, W.D. Virginia, Abingdon Division.

Feb. 23, 2001.

Edward Gaines, Jr., Bressler, Curcio & Stout, Bristol, VA, for plaintiff.

Robert Julius Breimann, Street, Street, Street, Scott & Bowman, Grundy, VA, for defendant.

ORDER

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on the objections filed by the defendant to the report of Magistrate Judge Pamela Sargent dated January *19*, 2001. The gist of the defendant's argument in support of its objection to the report appears to be that the plaintiff was an employee at will and that the defendant had the right to fire for any reason. The Magistrate Judge has found that there are genuine issues of material fact as to whether in firing the plaintiff, the defendant violated the Family Medical Leave Act (FMLA). It appears that if the court agreed with the defendant that employers could fire any person who is an employee at will regardless of whether it violated a federal statute. In other words, the Virginia doctrine of employee at will cannot supersede federal laws prohibiting discrimination.

The court hereby adopts the findings of fact and the recommended decision of Magistrate Judge Pamela Sargent and the said report is hereby adopted completely. The objections filed by the defendants are hereby overruled.

The Clerk is directed to send certified copies of this Order to counsel of record.

***REPORT AND RECOMMENDATION***

SARGENT, United States Magistrate Judge.

The plaintiff, Delois Blankenship, ("Blankenship"), filed this action seeking damages from her former employer, Buchanan County General Hospital, Inc., ("the Hospital"), for alleged violations of the Family Medical Leave Act, ("FMLA"), 29 U.S.C.A. §§ 2601–2654 (West 1999). Jurisdiction over this matter is based upon 28 U.S.C.A. § 1331 (West 1993). This matter is before the court on the Hospi-

tal's motion for summary judgment filed November 9, 2000. (Docket Item No. 23.) The Affidavits of Brenda Yates and John O'Keefe, which were executed in September 2000, have been filed in support of the Hospital's motion. (Docket Item Nos. 29, 30.) Blankenship also has filed an affidavit in support of her opposition to the motion. (Docket Item No. 26.) This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West 1993). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## I. Factual Background

The factual background of this case was set out previously in the court's February 3, 1998, Memorandum Opinion. (Docket Item No. 17.) These facts will not be repeated here, unless relevant to the current motion before the court.

Blankenship last worked for the Hospital on August 28, 1994, as a full-time dietary aide. On August 29, 1994, Blankenship began a period of leave from this position as a result of severe stress and depression based on the then recent death of her mother. Blankenship alleges that she intended to utilize accumulated paid vacation and sick leave through September 19, 1994. Blankenship alleges that, on September 19, 1994, she requested additional leave under the FMLA by partially completing an Employee Request for Family or Medical Leave form. Blankenship states that she signed the second page of this form and dated it September 19, 1994, assuming that the 12 weeks of leave permitted by the FMLA would begin on that date.

Blankenship alleges that she did not see a completed copy of this form until late October 1994. This completed copy listed August 28, 1994, as the start date of Blankenship's FMLA leave. Blankenship sought clarification from the Hospital, and she was informed that her FMLA leave time had begun on August 28, 1994. Blankenship alleges that she spoke with Brenda Yates, ("Yates"), the Hospital's Human Resources Director, in early November 1994 and that Yates informed her that her FMLA leave ended on November 28, 1994, at which time she would be expected to return to work.

On November 21, 1994, 12 weeks after August 28, 1994, the Hospital terminated Blankenship's employment. Yates notified Blankenship by letter dated November 21, 1994, that her employment had been terminated because she had failed to return to work upon the expiration of her FMLA leave. Yates and John O'Keefe, ("O'Keefe"), District Manager for ARA Food Services, Inc., now claim that they intended to terminate Blankenship's employment on August 29, 1994, based on allegations that she had attempted to steal food from the Hospital's kitchen on August 28, 1994.[1] While neither allege that Blankenship's employment was actually terminated based on these allegations of theft, both allege that Blankenship's employment would have been terminated based on these allegations, if she had returned from FMLA leave. O'Keefe also now states that he has learned that Blankenship falsely stated that she had never been convicted of a crime on her employment application.[2] O'Keefe claims that

---

1. With regard to the motion currently before the court, the Hospital has not produced any evidence from anyone having personal knowledge of the facts upon which it bases these allegations.

2. The Hospital's Memorandum In Support Of Motion For Summary Judgment states that

this application was attached as Exhibit A. There are, however, no exhibits attached to the memorandum filed with the court. Furthermore, the Hospital has not produced any evidence that Blankenship had been convicted of a crime prior to completing her employment application.

had this information been known to him, he would have never hired Blankenship. He also claims that he would have immediately terminated Blankenship's employment when this information became known to him.

Blankenship has denied that she ever engaged in any theft or attempted theft of any property from the Hospital. Blankenship also has stated that no one from the Hospital ever informed her that she had been accused of theft or that she would be terminated as a result of such allegations. Blankenship states that she first learned of these allegations during a discovery deposition taken as a result of this case.

## II. Analysis

As stated above, this case is before the court on the Hospital's motion for summary judgment. To prevail on its motion for summary judgment under Federal Rule of Civil Procedure 56(c), the Hospital must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering the Hospital's motion, the court must view the underlying facts and all reasonable inferences in the light most favorable to Blankenship. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Hospital argues that it is entitled to judgment as a matter of law on Blankenship's FMLA claims because it intended to terminate Blankenship's employment as soon as she returned from leave based on allegations that she had been involved in an attempted theft of Hospital property. The Hospital argues that the FMLA gave Blankenship no greater rights while she was on FMLA leave than she would have otherwise possessed had she not been on leave. Thus, the Hospital argues that

Blankenship should not be allowed to pursue a FMLA claim based on the Hospital's failure to reinstate her at the conclusion of her leave period when it had decided to terminate her. While it appears that the Fourth Circuit has not addressed this specific issue, the Hospital cites the Eleventh Circuit's opinion in O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349 (11th Cir.2000), in support of its arguments. Because I find important distinctions between the facts of the O'Connor case and this one, and because I believe that there remain genuine issues as to material facts in this case, I recommend that the court deny the Hospital's motion for summary judgment.

The FMLA provides eligible employees of a covered employer the right to take unpaid leave for a period of up to 12 work weeks in any 12–month period for a serious medical condition. See 29 U.S.C.A. § 2612(a)(1)(D) (West 1999); 29 C.F.R. § 825.100 (2000). The FMLA also provides that eligible employees have the right to be reinstated to their previous position or an equivalent position upon their return from leave. See 29 U.S.C.A. § 2614(a) (West 1999). The FMLA makes it unlawful for an employer to interfere with, restrain or deny the exercise of these rights. See 29 U.S.C.A. § 2615(a)(1) (West 1999). Employee claims brought under this provision are referred to as "interference" claims. See O'Connor, 200 F.3d at 1352.

The FMLA also contains two provisions that prevent retaliation by employers. See Dodgens v. Kent Mfg. Co., 955 F.Supp. 560, 564 (D.S.C.1997). First, the FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate" against an employee who opposes any practice made unlawful by the FMLA. See 29 U.S.C.A. § 2615(a)(2) (West 1999). Second, the FMLA makes it unlawful for

an employer "to discharge or in any other manner discriminate" against an employee who has filed a charge or has given or is about to give information or testimony regarding any inquiry or proceeding related to any right provided by the FMLA. *See* 29 U.S.C.A. § 2615(b) (West 1999). While the FMLA does not specifically provide that it is unlawful to discharge an employee in retaliation for requesting or receiving FMLA leave, the regulations interpreting the FMLA provide that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave.... [E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions...." 29 C.F.R. § 825.220(c) (2000). Based on this, the courts have recognized that the FMLA also provides a cause of action for retaliatory discharge for receiving FMLA leave. *See O'Connor*, 200 F.3d at 1352; *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159–60 (1st Cir.1998); *Dodgens*, 955 F.Supp. at 565; *see also Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir.1998) (finding that substantial evidence supported the jury's finding that employer terminated employee in retaliation for receiving FMLA leave); *Richmond v. ONEOK, Inc.*, 120 F.3d 205 (10th Cir.1997) (setting forth analytical framework to be used in FMLA retaliatory discharge claims).

In *Williams v. Shenango, Inc.*, 986 F.Supp. 309, 316–18 (W.D.Pa.1997), the court analyzed the differences between interference and retaliation claims under the FMLA, including the different frameworks to be used by the courts in addressing these separate claims. Based on the mandatory language of the FMLA and its legislative history, the court reasoned that interference claims should be governed by a strict liability standard. *Williams*, 986 F.Supp. at 317–18 (citing *Kaylor v. Fannin Regional Hosp., Inc.*, 946 F.Supp. 988,

996–97 (N.D.Ga.1996)); *see also Cross v. Southwest Recreational Industries, Inc.*, 17 F.Supp.2d 1362, 1369 (N.D.Ga.1998). Under this strict liability standard, an employer's intent is relevant in interference claims only with regard to the issue of damages as set forth in 29 U.S.C.A. § 2617(a)(1)(A)(iii) (West 1999). *Williams*, 986 F.Supp. at 318 (quoting *Kaylor*, 946 F.Supp. at 997).

In *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712–14 (7th Cir.1997), the Seventh Circuit held that if an employee proves by a preponderance of the evidence that she is entitled to the FMLA benefit she claims and that her employer interfered with or denied that benefit, the employee has proven that the employer violated the FMLA. *See Diaz*, 131 F.3d at 713. The Eleventh Circuit, however, has recognized that an employer can deny an employee on FMLA leave the right to reinstatement in certain circumstances without violating the FMLA. *See O'Connor*, 200 F.3d at 1354. In *O'Connor*, the Eleventh Circuit drew a distinction between "interference" claims based on an employer's refusal to grant leave and those based on a refusal to reinstate the employee. *O'Connor*, 200 F.3d at 1354. The court cited Department of Labor regulations which state:

An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example: (1) If an employee is laid off during the course of taking FMLA leave ... the employer's responsibility to continue FMLA leave, maintain group health

plan benefits and restore the employee cease at the time the employee is laid off. . . . An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

29 C.F.R. § 825.216(a) (2000). Based on this, the Eleventh Circuit held that when an employee who was on FMLA leave alleges that her employer denied her FMLA right to reinstatement, the employer should have the opportunity to prove that it would have discharged the employee even had she not been on FMLA leave. *O'Connor,* 200 F.3d at 1354. In particular, the court found that the employer in *O'Connor* had no duty to reinstate an employee who would have been terminated as part of a reduction in force even if she had not been on FMLA leave. *O'Connor,* 200 F.3d at 1354.

■ I cannot find that any court has extended this reasoning to allow an employer to refuse to reinstate an employee who it has terminated for cause while on FMLA leave or who it would have terminated for cause if the employee had been working. Nonetheless, I believe to hold otherwise would grant employees who qualify for FMLA leave greater rights than those who do not, and I believe that would be in direct contradiction with the Congressional intent in enacting the FMLA as expressed in the statute's clear language. *See Leary v. Hobet Mining, Inc.,* 981 F.Supp. 452, 455 (S.D.W.Va.1997). The FMLA states:

Nothing in the section shall be construed to entitle any restored employee to—. . .

(B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

29 U.S.C.A. § 2614(a)(3)(B) (West 1999). Therefore, I hold that when an employee in an FMLA interference claim proves by a preponderance of the evidence that she was entitled to an FMLA benefit and that her employer interfered with or denied that benefit, the employer may avoid liability by showing, by a preponderance of the evidence, that the employee would not have otherwise been employed at the time reinstatement was requested.

Unlike with interference claims, the analytical framework to be used in FMLA retaliation cases appears to be widely established. It appears that every court that has addressed the issue has applied the shifting burdens of proof analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to assess FMLA retaliatory discharge claims. *See Hodgens,* 144 F.3d at 160–61; *Morgan v. Hilti,* 108 F.3d 1319, 1323 (10th Cir.1997); *Dollar v. Shoney's, Inc.,* 981 F.Supp. 1417, 1419–20 (N.D.Ala.1997); *Williams,* 986 F.Supp. at 318 (citing *Kaylor,* 946 F.Supp. at 999–1000); *Leary,* 981 F.Supp. at 455; *Dillon v. Carlton,* 977 F.Supp. 1155, 1158 n. 8 (M.D.Fla.1997); *Beal v. Rubbermaid Commercial Products, Inc.,* 972 F.Supp. 1216, 1229 (S.D.Iowa 1997); *Dumoulin v. Formica,* 968 F.Supp. 68, 71 (N.D.N.Y.1997); *Sidaris v. Runyon,* 967 F.Supp. 1260, 1271 (M.D.Ala.1997); *Dodgens,* 955 F.Supp. at 566; *Petsche v. Home Federal Sav. Bank, Northern Ohio,* 952 F.Supp. 536, 537 (N.D.Ohio 1997); *Oswalt v. Sara Lee Corp.,* 889 F.Supp. 253, 258–59 (N.D.Miss. 1995) *aff'd* 74 F.3d 91 (5th Cir.1996); *see also Cline,* 144 F.3d at 301 (stating that *McDonnell Douglas* requirements for establishing a prima facie case are applicable to an FMLA retaliation case).

■ The *McDonnell Douglas* analysis allows employees to pursue a retaliation claim based on indirect proof of motive.

Under this analysis, an employee must establish a prima facie case by showing that: 1) she engaged in a protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action. *See Glunt v. GES Exposition Servs., Inc.,* 123 F.Supp.2d 847, 871 (D.Md.2000); *Sharpe v. MCI Telecommunications Corp.,* 19 F.Supp.2d 483, 488 (E.D.N.C.1998); *Dollar,* 981 F.Supp. at 1419–20; *Leary,* 981 F.Supp. at 455; *Dodgens,* 955 F.Supp. at 566. The burden of establishing a prima facie case is easy to meet. *See Hodgens,* 144 F.3d at 165 (citing *Texas Dep't. Of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Furthermore, the employee may show a causal connection by showing a "close temporal proximity" between the exercise of a protected right and a subsequent, adverse employment decision. *See Dollar,* 981 F.Supp. at 1420; *see also Leary,* 981 F.Supp. at 455 (assuming, without deciding, that temporal proximity between FMLA leave and termination satisfies the burden to produce evidence of causal connection to meet a prima facie case). The employee also may show a causal connection by showing that she was performing at a satisfactory level prior to her FMLA leave. *See Sharpe,* 19 F.Supp.2d at 488.

Once an employee makes a prima facie case, the burden shifts to the employer to articulate a legitimate reason for the employment action. *See Leary,* 981 F.Supp. at 455. Once the employer has produced this evidence, the burden reshifts to the employee to show that the proffered reasons were pretextual and that the employer, instead, took the adverse employment action because the employee had exercised her FMLA rights. *See Leary,* 981 F.Supp. at 455. At this step in the analysis, the weakness of the employer's explanation, standing alone, is not sufficient; rather, the employee must produce affirmative evidence of discriminatory motive or affirmative evidence that the employer's proffered explanation is simply unworthy of credence. *See Leary,* 981 F.Supp. at 456–57 (quoting *Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 731 (4th Cir.1996) (applying analysis in age discrimination case)); *see also Richmond,* 120 F.3d at 209; *Williams,* 986 F.Supp. at 322. An employee can demonstrate pretext by showing " 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's ... reasons for its action.' " *Richmond,* 120 F.3d at 209 (quoting *Morgan,* 108 F.3d at 1323). Also, the timing of an adverse employment action may be sufficient to create an issue of fact with regard to whether an employer's articulated nondiscriminatory reasons are pretextual. *See Williams,* 986 F.Supp. at 322.

It is against this legal framework that the court must analyze the facts of this case. Blankenship's complaint does not specifically characterize her FMLA claim as either an interference claim or a retaliatory discharge claim. It alleges only: "Defendant's acts in terminating your Plaintiff was in clear violation of 29 U.S.C. § 2615." (Complaint, (Docket Item No. 1), at ¶ 16.) Nonetheless, Blankenship's counsel argues that application of the *McDonnell Douglas* analysis to this case is inappropriate. (Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment, ("Plaintiff's Brief") (Docket Item No. 26), at 5). According to counsel, Blankenship is not alleging that she was discharged in retaliation for exercising her FMLA leave rights. Instead, Blankenship argues that the Hospital interfered with her right to be reinstated to her position upon the completion of her FMLA leave. In particular, Blankenship argues that the Hospital misled her as to the date her FMLA leave would expire, thereby preventing her from seeking and

obtaining reinstatement to her pre-leave position in a timely fashion. Thus, it appears that Blankenship is not pursuing a retaliatory discharge claim, and, therefore, application of the *McDonnell Douglas* analysis would not be appropriate in this case.

■ Accepting Blankenship's characterization of her claim as an interference claim does not, however, mean that summary judgment is appropriate under *O'Connor*. Blankenship's claim of misrepresentation, along with her claim that the Hospital did not provide her with proper notice as to the date on which her FMLA leave period began, raise important distinctions between the facts of this case and the *O'Connor* case. This court previously has ruled that important questions of fact remain to be determined at trial with regard to these issues. Therefore, under the *O'Connor* analysis, I find that genuine issues of material fact exist in this case with regard to whether the Hospital interfered with Blankenship's right of reinstatement as provided under the FMLA. Based on my reasoning set forth above, I also hold that the Hospital may avoid liability for refusing to reinstate Blankenship, if it can prove by a preponderance of the evidence that it would have discharged her even if she had not been on FMLA leave. I find that entry of the summary judgment in the Hospital's favor on this issue is not proper, however, because the evidence currently before the court raises a question of fact on this issue.

While the Hospital claims that it made the decision to terminate Blankenship on August 24, 1994, based on allegations that she was involved in the theft of Hospital property, it is undisputed that Blankenship was not terminated on this basis. In fact, the undisputed evidence shows that the Hospital terminated Blankenship on November 21, 1994, because she failed to return to work at the expiration of her 12–week FMLA leave period. The undisputed evidence shows that the Hospital never informed Blankenship of these allegations; instead, she learned of the allegations during a discovery deposition which was taken during the course of this litigation. I also note that the Hospital never raised this potential complete defense to liability until it filed its current summary judgment motion on November 9, 2000. This timing appears especially odd in light of the fact that the Hospital previously sought the entry of summary judgment in its favor in this case in 1998. Furthermore, the Hospital has not submitted any evidence from anyone with personal knowledge to prove the truth of these allegations. On the other hand, Blankenship has affirmatively denied that she was ever involved in any theft or attempted theft of Hospital property.

If this were a retaliatory discharge claim, and if the Hospital were to assert that these allegations of theft were its legitimate nondiscriminatory reason for terminating Blankenship, I find that the evidence recited above would create a genuine issue of fact with regard to pretext. *See Richmond,* 120 F.3d at 209. That being the case, I find that this evidence also raises a genuine issue of material fact as to whether the Hospital would have discharged Blankenship based on these allegations if she had not been on FMLA leave.

■ I also find that the Hospital's allegations that it would have fired Blankenship because she misrepresented her criminal record on her employment application do not justify entry of summary judgment in the Hospital's favor. Under *O'Connor* an employer can avoid liability for interference with an employee's FMLA right to reinstatement only if it can prove that the employee would have been terminated prior to the expiration of her FMLA leave.

The Hospital has produced no evidence to show that it learned about Blankenship's alleged criminal record prior to the expiration of her FMLA leave. That being so, this information could not have formed a basis for terminating Blankenship prior to the expiration of her leave. While, depending on the timing of the revelation, it may be relevant on the issue of damages, the Hospital has not presented evidence showing that it is relevant on the issue of liability.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Blankenship's complaint alleges an interference claim under the FMLA;

2. To meet the burden of proof on an FMLA interference claim, an employee must prove by a preponderance of the evidence that she was entitled to an FMLA benefit and that her employer interfered with or denied that benefit;

3. Once an employee meets this burden, an employer may avoid liability on an FMLA interference claim if it can prove by a preponderance of the evidence that the employee would not have otherwise been employed at the time reinstatement was requested;

4. Genuine issues of material fact exist in this case with regard to whether the Hospital interfered with Blankenship's right of reinstatement;

5. A genuine issue of material fact exists in this case with regard to whether the Hospital would have terminated Blankenship even if she had not been on FMLA leave; and

6. Entry of summary judgment in the Hospital's favor is not appropriate in this case.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the Hospital's motion for summary judgment.

### *Notice to Parties*

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (1993):

Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The judge may also receive further evidence to recommit the matter to the magistrate [judge] with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

January 2001.