**Edward YASHENKO, Plaintiff,**

v.

**HARRAH'S NC CASINO COMPANY, LLC, Defendant.**

**No. CIV.2:03 CV 226.**

United States District Court, W.D. North Carolina, Bryson City Division.

Jan. 20, 2005.

654

Michael G. Wimer, Arden, NC, for Plaintiff.

Karen M. Tyner, The Edwards Ballard Law Firm, Spartanburg, SC, for Defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment and Plaintiff's motion to strike Defendant's amended answer to the first amended complaint.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant Harrah's North Carolina Casino Company, LLC ("Defendant" or "Harrah's") entered into a Management Agreement with The Eastern Band of Cherokee Indians in June 1996 to manage the Tribe's casino operation in Cherokee, North Carolina. *See,* Exhibit A, Management Agreement between Harrah's N.C. Casino Company and The Eastern Band of Cherokee Indians ["Management Agreement"], *attached to,* Plaintiff's Motion for Summary Judgment on Plaintiff's FMLA claims ["Plaintiff's FMLA Brief"], filed June 7, 2004.[1] Under the Agreement, Harrah's was granted the authority to hire individuals to staff the casino and who would be employed with the Tribal Casino Gaming Enterprise ("TCGE"), the casino management arm of the Tribe. *Id.,* at § 4.6.3. In its capacity as an agent of the Tribe, Harrah's agreed to follow defined hiring preferences, which favored the "recruiting, training and employment [of] qualified members of the Tribe and their spouses and adult children in all job categories" of the TCGE at the casino.[2] *Id.,* at § 4.6.6. Harrah's also had the authority to staff some positions at the new casino with its own employees. *Id.,* at § 4.6.2. These Harrah's employees were considered "leased employees," in the sense that the TCGE would reimburse Harrah's for the salaries paid to these employees while they were working at the Cherokee Casino.

Exhibit C of the Management Agreement, at § 2. Leased employees are also subject to the tribal hiring preferences before they are assigned to the Cherokee Casino. Defendant's Brief in Support of Motion for Summary Judgment on Plaintiff's Racial Discrimination Claims ["Defendant's Racial Discrimination Brief"], filed November 19, 2004, at 6.[3]

Plaintiff Edward Yashenko was first employed by Harrah's Entertainment, Defendant's parent company, at its facility in Shreveport, Louisiana, in 1994. Defendant's Memorandum in Support of Motion for Summary Judgment on Plaintiff's FMLA Claims ["Defendant's FMLA Brief"], filed June 7, 2004, at 2. Yashenko received a transfer in 1997 to the Harrah's Cherokee, North Carolina, casino under the employment of the Defendant, and thus became a "leased employee" under the Management Agreement. *Id.* In 1999, Yashenko applied for and was awarded a promotion to the position of Employee Relations Manager at the Cherokee Casino. *Id.*

While employed with Defendant, Yashenko was granted numerous medical leaves of absence, many of which were designated as protected leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq. Id.,* at 3. In December 2000 to February 2001, Yashenko missed almost 2 months for back surgery. *Id.* Yashenko missed an additional period of

---

**1.** The copy of the Management Agreement attached to Plaintiff's motion contains only limited excerpts of the Agreement. A more expansive excerpt was presented to the Court as Deposition Exhibit 34 attached to the Deposition of Jo Ann Smith Blalock.

**2.** Under the hiring preferences policy, the order of preference is as follows: (1) enrolled Tribal Members; (2) spouse, parent, or children of Tribal members; (3) other Native Americans; (4) others from the Cherokee community; (5) others from the region; and

(6) others from the state of North Carolina. Defendant's FMLA Brief, at 12. Those applicants within the higher levels of the preference list would be given employment over applicants within the lower levels. Management Agreement, at § 4.6.6.

**3.** It appears from the record that "leased employees" could be previous Harrah's employees reassigned from other Harrah's facilities or new employees hired by Harrah's and initially assigned to the Cherokee facility.

almost four months from May 1, 2001, to August 23, 2001, for problems associated with the back surgery. *Id.* Part of this four-month medical leave was designated as FMLA leave. *Id.,* at 3–4. Yashenko took additional FMLA leave in March and April 2002; and even though by the end of April 2002 he had exhausted all his available FMLA leave, Defendant granted him a medical leave of absence on May 1, 2002, through August 12, 2002. *Id.,* at 4–5. After returning from each of the extended medical leave absences, Yashenko was restored to his prior position with the same pay, benefits, and responsibilities. *Id.,* at 5.

In May 2003, Plaintiff requested and was granted 12 weeks of FMLA leave to expire on July 21, 2003, for a serious health condition. Plaintiff's FMLA Brief, at 3; Defendant's FMLA Brief, *supra.* On June 3, 2003, while Plaintiff was on FMLA leave, the TCGE board of advisors approved a decision to eliminate Yashenko's position of Employee Relations Manager, a Harrah's "leased employee" position, along with the position of Employment Manager, a TCGE position, and create a new position of Employment/Employee Relations Manager. Plaintiff's FMLA Brief, at 4; Defendant's FMLA Brief, at 5–6. The person hired for this position would be employed under the TCGE and not Harrah's, and would have substantially similar responsibilities as the two positions eliminated. Defendant's FMLA Brief, at 6.

Defendant notified the Plaintiff, who was at that time on FMLA leave, and Doris Johnson, the Employment Manager, and informed them that their positions were being eliminated and that they could apply for the new position of Employment/Employee Relations Manager. *Id.,* at 9. Plaintiff did not apply for the new position and it was awarded to Johnson. *Id.,* at 12. Because the tribal hiring preferences policy would be applied to all applicants for the position, and because Johnson is an enrolled member of the Tribe, Johnson would have received the position over Plaintiff even if he had applied. Plaintiff's FMLA Brief, at 4; Defendant's FMLA Brief, at 12–13. When Plaintiff returned from his FMLA leave on July 21, 2003, and had failed to apply for any new positions with Defendant or the TCGE, his employment with Defendant was terminated. Defendant's FMLA Brief, at 13.

Plaintiff filed suit against Defendant in state court in Jackson County, North Carolina, for violations of the FMLA. The case was removed to this Court by Defendant on September 9, 2003. Plaintiff alleges two violations under the FMLA: the Defendant interfered with the exercise of his rights protected under the FMLA, and the Defendant retaliated against him for exercising his protected rights under the FMLA. Both Plaintiff and Defendant filed for summary judgment on the FMLA claims on June 7, 2003. Each party duly filed responses and replies thereto. On September 23, 2003, the Court granted Plaintiff's motion to file an amended complaint which added two additional claims alleging wrongful discharge in violation of North Carolina public policy and a violations of 42 U.S.C. § 1981. Both parties have since filed and fully briefed opposing motions for summary judgment as to Plaintiff's racial discrimination claims as well. Plaintiff also filed a motion to strike Defendant's amended answer to Plaintiff's first amended complaint on the grounds that it was untimely filed; Defendant has responded to that motion as well.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

The Court should grant a motion for summary judgment where there is no genuine issue of material fact and judgment for the moving party is warranted as a

matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists where there is evidence such that a reasonable jury could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings," but instead must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003). When considering opposing motions for summary judgment, the Court must consider each motion "separately on its own merits ... [and] the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.), *cert. denied*, 540 U.S. 822, 124 S.Ct. 135, 157 L.Ed.2d 41 (2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir.1996)).

## III.  PLAINTIFF'S FMLA CLAIMS

### A.  Plaintiff's Interference Claim

█ The FMLA states that,

any eligible employee who takes leave under [the FMLA] ... shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced, or, (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1)(A). While some courts interpreting this provision of the

FMLA statute have held that the statute confers an absolute right of restoration following protected leave, *see,  e.g.,* *Williams v. Shenango, Inc.*, 986 F.Supp. 309, 316–318 (W.D.Pa.1997), other courts, including two of our sister courts in this Circuit, have held that an employer may avoid liability for failing to restore the employment of an employee following protected leave by showing the  employee would have been discharged even if the employee had not taken the leave. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir.2000); *Blankenship v. Buchanan Gen. Hosp.*, 140 F.Supp.2d 668, 673 (W.D.Va.2001); *Leary v. Hobet Mining, Inc.*, 981 F.Supp. 452, 455 (S.D.W.Va.1997). The Fourth Circuit has not decided the question of whether this strict liability regime should be applied to an employee's right of restoration under the FMLA. This Court sides with those courts' rulings that the right to restoration following protected leave is not absolute under the FMLA. The Court finds this interpretation is the only interpretation consistent with the Act's provision that an employer is not required to grant an employee on FMLA leave "any right, benefit, or position of employment other than the right, benefit, or position to which the employee would have been entitled to had [he] never taken leave." 29 U.S.C. § 2614(a)(3)(B); *see also, Blankenship*, 140 F.Supp.2d at 673 ("[The Court] believe[s] to hold otherwise would grant employees who qualify for FMLA  leave greater rights than those that [do] not[,] ... in direct contradiction with the Congressional intent in enacting the FMLA as expressed in the statute's clear language."); *Leary*, 981 F.Supp. at 455 (quoting 29 U.S.C. § 2614(a)(3)(B) in support of its finding).[4] Therefore, an employer has

---

4.  In his response to Defendant's motion for summary judgment, Plaintiff identifies two unreported cases from a district court within

the Fourth Circuit which state that an employer's intent is not relevant in determining whether an employee's substantive rights un-

no duty to restore an employee to his previous position following protected leave if it can prove that the employee would have been removed from that position if he had not taken the protected leave.

This interpretation is also supported by FMLA regulations. The regulations address a similar situation to the case at bar where an employee is laid off while on FMLA protected leave. 29 C.F.R. § 825.216(a). The regulations state that in this situation, the employer may avoid liability for failing to restore the employee to his position following the FMLA leave by showing the employee would have been laid off if he was not on FMLA leave. *Id.*

■ Here, Defendant moves for summary judgment on the grounds that Plaintiff's position would have been eliminated under a restructuring plan even if he had not been on FMLA protected leave. However, Plaintiff claims there is a genuine issue of material fact as to whether Harrah's restructuring was a sham in order to avoid its obligations under the FMLA. In support of this argument, Plaintiff asserts that his position was simply shifted to a new position with a new title, but with the same responsibilities and, therefore, was not really eliminated. However, Plaintiff's argument fails to recognize the importance of the fact that the new position involved employment with TCGE, a new, separate employer than Plaintiff's current position.

It is undisputed that Harrah's and the TCGE are separate entities. Defendant is a subsidiary of Harrah's Entertainment Company while the TCGE is the instrumentality of the Cherokee Tribe which has the authority to conduct casino related business activities approved by the Tribal Council. Management Agreement, at § 2.42. Harrah's and TCGE entered into a management agreement in 1996 whereby Harrah's would manage the casino operations for the TCGE. Under this agreement, Harrah's has the authority to hire TCGE employees as well as to employ its own personnel at the Cherokee casino. *Id.*, at § 4.6.3. It is undisputed that the Employee Relations Manager position under the employment of Harrah's was eliminated while the Plaintiff was on leave. It is also undisputed that a similar position was not created under Harrah's employment. The fact that a similar position, with similar responsibilities, was created under the TCGE is irrelevant to the Plaintiff's right to restoration owed to him by Harrah's under the FMLA as his employer. Plaintiff admits that he was always a Harrah's employee, received his pay and benefits from Harrah's, and was never employed by the TCGE. *See* Plaintiff's Reply in Support of its Motion for Summary Judgment on Plaintiff's Racial Discrimination Claims, filed January 14, 2004, at 7 ("[U]nder any analysis of the employment

der the FMLA were violated, including the right to restoration. *See Klaiber v. Rinaldi,* 2001 WL 823529, at *3 (M.D.N.C.2001), *aff'd,* 22 Fed.Appx. 347 (4th Cir.2002); *Findlay v. PHE, Inc.,* 1999 WL 1939245, at *2 (M.D.N.C. 1999). However, neither of these decisions specifically considered the situation here where a plaintiff asserts an absolute right to restoration in response to an employer's assertion that the employee would have been fired even if he had not taken the protected leave. Instead, the *Klaiber* decision dealt with an employer's failure to give adequate notice to an employee, a requirement all employee's are entitled to and could not be lost

by any event occurring while the employee was on FMLA leave. The *Findlay* decision dealt only with a retaliation claim put forth by an employee. Therefore any reference in these opinions regarding an absolute right to reinstatement is mere dicta. Additionally, the court notes that neither decision considered the right to reinstatement in the light of the FMLA provision stating that an employee on FMLA is not entitled to any rights or benefits they would not have been entitled to had they not been on FMLA leave. The Court finds this provision of the statute essential to its determination that the right to restoration under the FMLA is not absolute.

relationship and Management Agreement, neither the Tribe nor TCGE were Yashenko's employers"); Affidavit of Edward Yashenko, *attached to* Plaintiff's Reply in Support of Motion for Leave to File First Amended Complaint, filed June 28, 2004, ¶¶ 3, 4. Plaintiff's right to restoration is not implicated by a new, but similar, position created under a different employer.

Plaintiff also claims that the lack of documentary evidence of the restructuring demonstrates that it was a sham and was designed instead to avoid Harrah's obligations under the FMLA. However, the Defendant has submitted evidence that shows the elimination of Plaintiff's position was part of a legitimate restructuring plan to decrease the size of the Human Resources Department at the casino. Tom Fagg, Director of Human Resources during the time leading up to Plaintiff's discharge, testified that the Human Resources Department was seen as heavy in personnel; as a result, staff was reduced from 41 employees to 28 employees in two years leading up to the restructuring at issue here. Exhibit B, Deposition of Tom Fagg, *attached to* Defendant's FMLA Brief ["Fagg Deposition"], at 25–27, 43; Defendant's FMLA Brief, at 18. In addition to Plaintiff's position, and that of the Employee Manager, the Human Resources Department had recently eliminated numerous training positions, an administrative assistant position, two graphic artist positions, and the position of assistant director of human resources. Fagg Deposition, at 25. These eliminated positions

were held by both Harrah's and TCGE employees. *Id.*, at 28. Further, the fact that the elimination of Plaintiff's position was proposed in 2002 but initially denied, demonstrates that management had been considering the elimination of Plaintiff's position at issue here for some period of time. *See* Plaintiff's FMLA Brief, at 8; Exhibit J, Reorganization Discussion Points, dated September 23, 2002, *attached to* Plaintiff's FMLA Brief.[5]

The Court finds there is also evidence of a contemplated shift of the staffing of positions from Harrah's to TCGE employees. In the Management Agreement, Harrah's and the Tribe agreed that Harrah's would train tribal members in the operation of the casino and that certain positions would *"initially"* be filled with Harrah's employees. Exhibit A, Management Agreement, at §§ 1.3, 4.6.2 (emphasis added). These provisions are evidence that the parties contemplated a shift in staffing from Harrah's employees to TCGE of certain positions as the TCGE employees became trained and qualified to hold these positions. In fact, the Management Agreement explicitly described a goal of having all management positions filled by TCGE employees after a period of five years. *Id.*, at § 4.6.6. Further, Jo Ann Smith Blalock recalled in her deposition that in 2003 there were only three positions in the Human Resources Department which were filled by Harrah's employees: the Plaintiff's, the Director of Human Resources', and the training manager's. Deposition of Jo Ann Smith Blalock, *attached to* Plain-

---

**5.** The Plaintiff argues that under the FMLA "[a]s a matter of policy," Defendant cannot restructure a position when an employee is on leave when the restructuring plan was not in place at the time the leave commenced. Plaintiff's Brief, at 10. However, to hold this would prohibit an employer from considering any restructuring while any employee was on FMLA leave. While the Plaintiff is correct that under FMLA regulations an employer

may not replace an employee or restructure to accommodate the employee's absence due to protected leave, the employer must only show that the employee would have lost his position under an otherwise legitimate restructuring if he had not taken the FMLA leave, regardless of when the decision was made or consideration of the restructuring began.

tiff's FMLA Brief, at 42–43. At the time of her deposition in February 2004, Blalock stated that there were not any positions in the Human Resources Department filled by Harrah's employees. *Id.*, at 44. Blalock also stated she believed there was an agreement not to hire any new Harrah's employees, only TCGE employees, for the casino. *Id.*, at 37–39.

Therefore, viewing this evidence in a light most favorable to the Plaintiff, the elimination of Plaintiff's position was consistent with Defendant's plan to decrease the size of the Human Resources Department at the casino and to shift positions within the casino to staffing by TCGE and not Harrah's employees.

Plaintiff also argues that his adequate job performance prior to his FMLA leave further demonstrates that the restructuring was a sham. Plaintiff places great weight on Blalock's statement that Plaintiff's employment was not in jeopardy when he initially took his protected leave. Plaintiff's Response to Defendant's Motion for Summary Judgment on Plaintiff's FMLA claims ["Plaintiff's FMLA Response"], filed June 24, 2004, at 15. Additionally, Plaintiff points out that he recently received a bump in his pay grade just prior to his FMLA leave. Plaintiff's Reply Supporting Motion for Summary Judgment on Plaintiff's FMLA claims ["Plaintiff's FMLA Reply"], filed July 9, 2004, at 7–8. However, this argument fails because the elimination of Plaintiff's position was separate from, and unrelated to, any evaluation of the Plaintiff's performance of his employment duties. Instead, the Defendant asserts, and the evidence shows

that, the elimination of Plaintiff's position was part of a legitimate restructuring plan. Further, while the Plaintiff's position was initially eliminated, his employment actually was not.[6] *Id.*, at 8. Plaintiff was not fired until he returned from protected leave, almost a month after the new position was filled by Johnson, and had failed to apply for other positions at the Cherokee facility, as he was encouraged to do so by his supervisors. Defendant's FMLA Brief, at 10–11.[7]

The Court finds that Defendant has proven that Plaintiff's position would have been eliminated even if he was not on FMLA protected leave. Plaintiff has not put forth sufficient evidence to prove there is a genuine issue of material fact as to whether Defendant's asserted restructuring was a sham. The Plaintiff asks the Court to recognize an inference of discrimination from the evidence he has produced. While the Court must view permissible inferences in favor of the Plaintiff, as the non-moving party, such inferences "must 'fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture.'" *JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001) (quoting *Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir.1995)); *Byrd v. Hopson*, 265 F.Supp.2d 594, 602 (W.D.N.C.2003), *aff'd*, 108 Fed. Appx. 749 (2004). Here, the Court finds that Plaintiff's inferences of discrimination with respect to the allegations that the Defendant's restructuring was a sham do not rise above mere speculation and con-

---

**6.** Plaintiff admits that "[his] employee benefits continued until the end of his 2003 FMLA leave," demonstrating that while his position was eliminated, his employment was not terminated until he returned from the FMLA leave and failed to apply for any other available positions. Plaintiff's FMLA Response, at 14.

**7.** Plaintiff, before returning from FMLA leave, was forwarded several job descriptions for positions within the casino for which he was encouraged to apply. Yashenko Deposition, at 89, 103–04.

jecture. Therefore, the Court grants Defendant's motion for summary judgment with regard to Plaintiff's interference claim. ·

With regard to Plaintiff's motion for summary judgment, the Plaintiff initially moves for summary judgment on the grounds that he had an absolute right to restoration to his previous position, or an equivalent position, following his FMLA protected leave. However, the Court has found that this is not the proper interpretation of the law, and that there are limitations to an employee's right of restoration where the employer shows that the employee would have been discharged even if he had not taken the protected leave. Alternatively, Plaintiff argues that he is entitled to summary judgment because the evidence, viewed in the light most favorable to the Defendant, shows the alleged restructuring was a sham and judgment should, therefore, be granted to him as a matter of law. Because the Court finds that Plaintiff has not created an genuine issue of material fact as to the authenticity of the Defendant's restructuring when viewing the evidence in his · favor, the Court does not find that Plaintiff has proven the restructuring was a sham as a matter of law while viewing the evidence in Defendant's favor. The Court, therefore, denies Plaintiff's motion for summary judgment as to his interference claim.

## B. Plaintiff's Retaliation Claim

■ Claims of retaliatory discharge under the FMLA are evaluated under the *McDonnell Douglas* framework. *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir.2001). Under the *McDonnell Douglas* framework, the employee must first prove a *prima facie* case of retaliation.[8] *Id.* Under the *prima facie* case, the employee must show that he exercised an FMLA protected right, that he suffered an adverse employment action, and that there is a causal connection between the first two elements. *Blankenship,* 140 F.Supp.2d at 674. Once the employee has proven a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action taken. *Nichols, supra.* The burden then returns to the employee to prove that the employer's proffered reason is mere pretext for discrimination. *Id.* To prove pretext, the employee must put forth evidence that the employer had a discriminatory motive or that the employer's proffered explanation is unworthy of belief. *Blankenship, supra; see also Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir.2004) (ADEA case).

Considering Defendant's motion for summary judgment, and assuming that Plaintiff has satisfied his *prima facie* case of retaliation, Defendant has put forth the legitimate reason that Plaintiff was discharged because his position was eliminated under a valid restructuring. Therefore, to defeat Defendant's motion, the Plaintiff has the burden to offer evidence that the Defendant's proffered reason is a pretext for discrimination. *See, Nichols,* 251 F.3d at 502.

■ Plaintiff's argument that Defendant's asserted restructuring was a sham fails here as it did under Plaintiff's interference claim. As discussed *infra,* the evidence, viewed in the light most favorable to the Plaintiff, shows that prior to Plaintiff's discharge the Defendant had considered eliminating Plaintiff's position, had been following a plan to decrease the size of the Human Resources Department at the casino, and had contemplated a shift

---

8. The burden of proving a *prima facie* case is not onerous. *Blankenship,* 140 F.Supp.2d at 674 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

away from Harrah's employees staffing the casino in favor of TCGE employees. This evidence is consistent with a finding that Defendant's restructuring was legitimate.

Plaintiff's other arguments that the creation of a similar position under the TCGE and his adequate job performance prior to his leave are evidence of pretext also fail for the same reasons they failed under Plaintiff's interference claim. Instead, this evidence is entirely consistent with the Defendant's asserted legitimate reason for Plaintiff's discharge was that his position with Harrah's was eliminated.

Plaintiff asserts that the proximity in time between the Plaintiff's FMLA leave and the decision to eliminate his position is sufficient evidence of Defendant's discriminatory motive to demonstrate pretext. While in some cases temporal proximity is sufficient to establish pretext, the Court is unpersuaded in the case at bar. *See e.g., Blankenship,* 140 F.Supp.2d at 674 ("[T]he timing of an adverse employment action *may* be sufficient to create an issue of fact with regard to whether an employer's articulated nondiscriminatory reasons are pretextual." (emphasis added)). Instead, the Court is persuaded by evidence of Defendant's history of approving the Plaintiff's medical and FMLA leave that it did not act with discriminatory motive in firing the Plaintiff. Prior to the FMLA leave at issue here, Defendant had granted Plaintiff several medical leaves of absence over the course of his employment, including many that were designated as FMLA protected leave. Defendant's FMLA Brief, at 3–5. In fact, Plaintiff took approximately 36 weeks of medical leave in 2001 and 28 weeks in 2002. *Id.,* at 5. After each of these medical leave absences, Plaintiff was restored to his previous position of employment with the same salary and benefits. *Id.* Further, during the FMLA leave at issue in this case, Defendant granted

Plaintiff an additional 14 weeks of leave despite the fact that Plaintiff had already exhausted his available medical leave for that year. *Id.* While many courts have generally considered an employer's history of granting FMLA leave in determining whether the element of causation in the *prima facie* case has been met, the Court finds it is also appropriately considered in evaluating whether an employee has satisfied his burden of proving pretext. *See Curry v. E–Systems, Inc.,* 72 F.3d 126 (table), 1995 WL 729512, at *4 (4th Cir. 1995) (holding that the court may consider evidence relating to *prima facie* case when determining if plaintiff has met burden of proving proffered reason is pretext for discrimination) (*quoting St. Mary's Honor Cen. v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The fact that the Defendant had historically and regularly granted Plaintiff medical leave followed by the full restoration of his employment is evidence that Defendant acted without discriminatory intent when Defendant later eliminated Plaintiff's position while he was on protected leave. *Dodgens v. Kent Mfg. Co.,* 955 F.Supp. 560, 566 (D.S.C.1997) (granting summary judgment for employer on retaliatory discharge claim under FMLA where evidence showed employer had approved at least 129 days of medical leave and in each case restored plaintiff to previous employment).

Plaintiff has failed to meet his burden in putting forth sufficient evidence to create a genuine issue of material fact that Defendant's proffered reason for eliminating Plaintiff's position and terminating him is a pretext for discrimination. Therefore, the Court grants Defendant's motion for summary judgment on the retaliation claim.

Given that the Court has found the Plaintiff has failed to create a genuine issue of fact as to his retaliation claims to defeat Defendant's summary judgment claim, the Court holds Plaintiff has not

presented sufficient evidence to warrant judgment as a matter of law. Plaintiff's motion for summary judgment is, therefore, denied.

## IV. PLAINTIFF'S SECTION 1981 CLAIMS

### A. Plaintiff's § 1981 Claims

Plaintiff's alleges that the Defendant's use of tribal preferences in hiring its own employees at the Cherokee casino, and not just those to be employed by the TCGE, was in violation of § 1981. Plaintiff alleges that the unlawful use of this tribal preferences policy by Harrah's resulted in his failure to receive promotions or transfers to other Harrah's positions within the Cherokee casino,[9] the termination of his employment as Employee Relations Manager, and his failure to receive the position of Employment/Employee Relations Manager created when his previous job was eliminated or restructured. The first two of these claims by the Plaintiff are rightfully asserted against Harrah's and will be further discussed below. However, with respect to Plaintiff's third claim, as discussed *infra*, the new position of Employment/Employee Relations Manager, created when Plaintiff's position was eliminated, was with the TCGE, a separate and distinct entity from the Defendant. The Defendant's involvement in hiring for this position and applying the tribal preferences, was solely as an agent for the TCGE under the Management Agreement. Any claim arising out of the failure of the Plaintiff to receive this position can only be asserted against the TCGE, therefore, the Defendant is entitled to judgment as a matter of law as to this claim.

Section 1981 does not explicitly provide for its application to Indian tribes or private businesses operating on or near Indian Reservations. However, Title VII of the Civil Rights Act of 1964 explicitly bars such application by specifically exempting Indian tribes under the statutory definition of an employer. 42 U.S.C. § 2000e-(b). Therefore, Indian tribal preference programs when implemented by an Indian Tribe cannot serve as the basis of a Title VII employment discrimination suit. *See, Thomas v. Dugan,* 168 F.3d 483 (table), 1998 WL 911738, *1 (4th Cir.1998). Further, Title VII explicitly exempts from Title VII "any business or enterprise on or near and Indian Reservation with respect to any publically announced employment practice ... under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation." 42 U.S.C. § 2000e-2(i).

■ While § 1981 does not contain such express provisions, the Court finds it would be contrary to Congress' expressed will to allow a plaintiff to circumvent the express provisions of Title VII and assert a employment discrimination claim against an Indian tribe or private business on an Indian reservation for the use of tribal preferences merely by reconfiguring the claim as one for relief under § 1981 instead of Title VII.[10] Two circuit courts

---

**9.** The Court liberally construes Plaintiff's pleadings as including this claim against the Defendant even though such a claim is not explicitly stated. Plaintiff alleges in his summary judgment brief that he "fell victim to [the tribal preferences] policy on more then one occasion" and testified at his deposition of numerous positions he applied for and did not receive, at least some of which were with Harrah's and were filled by other applicants who were tribal members. Plaintiff's Brief in

Support of its Motion for Summary Judgment on Plaintiff's Race Discrimination Claim, filed December 10, 2004, at 5; Yashenko Deposition, at 133, 138–39, 145.

**10.** In a previous case, this Court was similarly faced with racial discrimination claims against the Eastern Band of Cherokee Indians for the use of tribal preferences at the Cherokee casino which resulted in the termination of two Caucasian employees. *See, Thomas*

have addressed this question and came to the same conclusion. *See, Taylor v. Alabama Intertribal Council Title IV,* 261 F.3d 1032, 1035 (11th Cir.2001), *cert. denied,* 535 U.S. 1066, 122 S.Ct. 1936, 152 L.Ed.2d 841 (2002) ("In our view, it would be wholly illogical to allow plaintiffs to circumvent the Title VII bar against race discrimination claims based on a tribe's Indian employment preference programs simply by allowing a plaintiff to style his claim as [a] § 1981 suit."); *N.L.R.B. v. Pueblo of San Juan,* 280 F.3d 1278, 1284 (10th Cir.2000) (recognizing that the specific provisions of Title VII, prohibiting discrimination in employment and excluding Indian tribes from its coverage, controlled over the general provisions of § 1981 and precluded any discrimination claim against the tribe); *see also Wardle v. Ute Indian Tribe,* 623 F.2d 670, 673 (10th Cir.1980) (dismissing § 1981 claim against tribal employer based on Title VII provisions barring discrimination suits concerning the use of Indian hiring preferences); *Stroud v. Seminole Tribe of Florida,* 606 F.Supp. 678, 679 (S.D.Fla.1985). Further, the Fourth Circuit has continuously recognized that the same analysis should apply to disparate treatment claims under § 1981 as under Title VII. *See e.g., Bryant v. Aiken Reg'l Med. Cen. Inc.,* 333 F.3d 536, 545 (4th Cir.2003), *cert. denied,* 540 U.S. 1106, 124 S.Ct. 1048, 157 L.Ed.2d 891 (2004); *Mallory v. Booth Refrigeration Supply Co. Inc.,* 882 F.2d 908, 910 (4th Cir.1989).

Applying these rules to the case at hand, the Court finds that Plaintiff's racial discrimination claims are barred under § 1981 and Title VII, and Defendant is entitled to judgment as a matter of law. It is undisputed that the Defendant is a private business operating on an Indian reservation. However, Plaintiff argues that summary judgment should not be awarded for the Defendant because the use of the hiring preferences by Harrah's was not a "publically announced employment practice" as required. *See,* 42 U.S.C. § 2000e–2(b). As evidence, the Plaintiff has put forth his own affidavit stating that prior to his firing, advertisements for Harrah's positions stated that Harrah's was a equal opportunity employer and Harrah's only changed its advertisements to state that all applicants were subject to tribal preferences after he was fired. *See,* Affidavit of Edward Yashenko ["Yashenko Affidavit"], *attached to* Plaintiff's Brief in Support of its Motion for Summary Judgment on Plaintiff's Race Discrimination Claim, filed December 10, 2004, at 1. Viewing the evidence in the light most favorable to the Plaintiff, his unsupported allegations of statements in Harrah's advertising materials do not create a genuine issue of material fact for trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion."). Further, Harrah's has produced copies of advertisements used during the relevant time period, including the time before the Plaintiff was fired, which all include the statement that a preference for tribal members would be applied to any appli-

---

and *Miller v. Dugan,* Civil Nos. 2:97cv177, 2:97cv178 (W.D.N.C.1997), *aff'd,* 168 F.3d 483 (table), 1998 WL 911738 (4th Cir.1998). The plaintiffs in *Thomas* asserted both Title VII and § 1981 claims against the Tribe, the TCGE, and the Tribe's Chief. However, while using the express provisions of Title VII barring racial discrimination suits against Indian tribes to dismiss plaintiffs' Title VII claims,

the Court did not address whether the same provisions prohibited plaintiffs' § 1981 claims because the Court dismissed those claims on the grounds of sovereign immunity. *Id.,* at 4. The Fourth Circuit affirmed the Court's decision on the same grounds without addressing the applicability of the Title VII provisions to § 1981 claims. *Thomas,* 1998 WL 911738, at *1.

cants. *See,* Attachment B, *attached to,* Defendant's Racial Discrimination Brief.

Even if Defendant's advertisements had not stated that it applied tribal preferences to applicants as Plaintiff alleges, the Defendant could be found to have "publicly announced" its employment practices in other ways. *See, Little v. Devils Lake–Sioux Mfg. Corp.,* 607 F.Supp. 700, 701 (D.N.D.1985) (finding statute satisfied where chairman of the defendant's board stated in an affidavit that "[t]he publicly announced employment practice of the corporation is to give preferential treatment to American Indians living on or near the Devils Lake Sioux Indian Reservation" despite the fact that defendant's employee handbook provided that defendant gave "wholehearted support to the principle of Equal Opportunity Employment"). For example, Harrah's employee handbook contains a description and an explanation of the hiring preferences policy. Affidavit of Jo Blalock, *attached to* Defendant's Reply Memorandum in Support of Motion for Summary Judgment and Response Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on Plaintiff's Racial Discrimination Claims, filed January 4, 2005, at 1. Further, in an affidavit provided by the Plaintiff's wife and former Cherokee casino employee, she states that the use of hiring preferences among all casino employees was communicated to her through "working with other managers, ... attending management meetings, and reviewing management documents." Affidavit of Susan Yashenko, *attached to* Plaintiff's Racial Discrimination Brief, filed December 10, 2004, at 1. This evidence all supports a finding that the Defendant satisfied the statutory requirements and had sufficiently "publicly announced" its use of tribal preferences. Plaintiff is unable to create a genuine issue of material fact otherwise.

Having found that Defendant has sufficiently satisfied the requirements of the statute, the Court finds that the Defendant is entitled to summary judgment with regard to Plaintiff's racial discrimination claims under § 1981.[11]

As to Plaintiff's motion for summary judgment on this issue, given that the Court has found that the Plaintiff has failed to create a genuine issue of material fact for trial while viewing the evidence in his favor, the Court cannot find that Plaintiff is entitled to judgment as a matter of law while viewing evidence in the Defendant's favor. Therefore, Plaintiff's motion for summary judgment as to his racial discrimination claims is denied.

**B. Wrongful Discharge in Violation of North Carolina Public Policy**

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and same will be dismissed without prejudice.

**V. PLAINTIFF'S MOTION TO STRIKE AMENDED ANSWER TO FIRST AMENDED COMPLAINT**

Given the Court's disposition of this case on summary judgment on the grounds stated above, Plaintiff's motion to strike Defendant's amended answer is denied as moot.

**VI. ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motions for summary judgment are **DENIED**, the Defendant's motions for summary judgment are *AL-*

---

11. Because this Court finds this issue dispositive of Plaintiff's racial discrimination claims, the Court will not address the Defendant's other arguments for summary judgment.

*LOWED.* A Judgment dismissing Plaintiff's claims is filed herewith.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike Defendant's amended answer is hereby **DENIED** as moot.

### *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Plaintiff's motions for summary judgment are **DENIED**; the Defendant's motions for summary judgment are **ALLOWED**, and the Plaintiff's federal claims are hereby **DISMISSED WITH PREJUDICE** in their entirety.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, the Court having declined to exercise its jurisdiction over the Plaintiff's pendant state claims, the same are hereby **DISMISSED WITHOUT PREJUDICE.**